IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

ROBIN WILSON                                                    PLAINTIFF

V.                                          CASE NO. 3:20-cv-00039-TSL-JCG

ANDREW SAUL, *Commissioner of*                      DEFENDANT
*Social Security*

## REPORT AND RECOMMENDATION

Pursuant to 42 U.S.C. § 405(g), Plaintiff Robin Wilson seeks judicial review of the decision of the Commissioner of the Social Security Administration, denying her application for a period of disability and disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 423(d)(1)(A). Plaintiff filed an Appellant's Brief [11]. Defendant, the Commissioner of Social Security, filed a Brief in Support of the Commissioner's Decision [12]. Plaintiff filed no rebuttal. Having considered the submissions of the parties, the record, and relevant law, the undersigned recommends that the decision of the Commissioner be affirmed because the Commissioner used the proper legal standards to evaluate the evidence, and substantial evidence supports the Commissioner's conclusions.

## BACKGROUND

I.     Procedural History

Plaintiff applied for Title II disability insurance benefits, alleging disability beginning on August 1, 2015, when she was 53 years of age, due to a seizure disorder, crushed ankle repaired with metal, heart attack, spontaneous ruptured spleen, asthma, and Hepatitis C. [8] at 222, 253. Upon a request for reconsideration of an

unfavorable determination made March 14, 2017, Plaintiff amended her application to allege "[d]evelopment of severe social anxiety as a result of her conditions," beginning April 1, 2016. [8] at 136, [12] at 1. Plaintiff's application was denied, and she requested a hearing before an administrative law judge (ALJ). The ALJ heard Plaintiff's case, which included testimony from Plaintiff, Plaintiff's daughter, and a vocational expert. *Id.* at 40-96.

The ALJ issued a written decision on February 6, 2019, which denied Plaintiff's claims. *Id.* at 23-34. The Appeals Council denied review. *Id.* at 6. Plaintiff appealed to this Court, arguing the ALJ erred in (1) finding Plaintiff's affective disorders were not severe; (2) reaching conclusions regarding Plaintiff's postural and walking limitations; and (3) finding Plaintiff's past-relevant work included work as a system analyst. [11] at 3-5.

II.    Plaintiff's Testimony

Plaintiff testified as follows at the administrative hearing: She completed high school, completed a bachelor's degree in psychology, and began work on a master's degree but did not complete the degree. [8] at 46-47. Plaintiff previously worked as a corrections officer, child welfare caseworker, probation and parole officer, and a "data analyst." *Id.* at 52, 88. At the time of the December 2018 administrative hearing, Plaintiff was not employed and lived with her 28-year-old daughter and 15-year-old daughter. *Id.* at 46-47. Plaintiff last worked from 2013 to 2015 as a counselor for people on probationary status from prison.

Plaintiff fractured her ankle during a motor vehicle accident in the 1990s and required reconstructive surgery. *Id.* at 26, 66, 73. She now has arthritis in that ankle which prevents her from standing more than one hour per day. *Id.* at 75. Plaintiff must stop twice when walking from a parking garage because of pain in her ankle. *Id.* Plaintiff treats the pain caused by her ankle with Ibuprofen. *Id.* at 76.

Plaintiff had a heart attack in 2015. *Id.* at 66. She ruptured her spleen in 2016, which caused an umbilical hernia. *Id.* at 66. The umbilical hernia prevents her from lifting even a gallon of milk. *Id.* at 66-67. While no doctor has told Plaintiff not to lift, lack of income and medical insurance prevent Plaintiff from seeking treatment. *Id.* at 71-72.

Plaintiff began having seizures when she was thirteen years of age. Plaintiff's seizure disorder worsened while she was working in 2015. Plaintiff's seizure disorder causes her to be weak and disoriented, lose her balance, fall uncontrollably, and need extended sleep to recover. *Id.* at 53, 61, 70, 75-76. In 2016, Plaintiff began having seizure aftereffects lasting four-to-seven days. *Id.* at 62. Plaintiff has taken the same medication to treat her seizure disorder for 29 years. *Id.* at 56-57. The dosage was recently increased because of "breakthrough seizures." *Id*. The aftereffects following a seizure are even worse now and currently last two weeks. *Id.* at 63. Twice, Plaintiff experienced three seizures in one day and what felt to her like an out of body experience. *Id.* at 54-55.

Beginning in 2016, after she stopped working, Plaintiff developed depression and anxiety. *Id.* at 58-59. Plaintiff has crying spells every day because of stress and

family. *Id.* at 59. Plaintiff does not "like dealing with people at all, because I never know what's going to come out of my mouth anymore." *Id.* Plaintiff takes an antidepressant, and the dosage was increased in 2017 because "it was working but not at full potential." *Id.* at 60.

Plaintiff left her job as a correctional officer due to climbing requirements she could not accomplish because of arthritis in her ankle. *Id.* at 66, 73. Plaintiff was terminated from her next job, as a probation officer, because of "missing work due to seizures" and an altercation with a coworker. *Id.* at 47, 74.

Plaintiff has not driven in over a year because during a seizure, she blacks out, and driving would be a danger to herself and others. *Id.* at 55. Plaintiff folds clothes. *Id.* at 63. Plaintiff does not do other chores because she shakes a lot. *Id.* at 64. Plaintiff does not take a bath without someone else is in the bathroom because she may fall from a seizure. *Id.* at 64. Plaintiff must be reminded to take baths and showers. *Id.* Plaintiff watches her daughter on the school dance team during football season. *Id.* at 59. Otherwise, disability prevents Plaintiff from attending her daughter's extracurricular activities, and she only attends one event every thirty to forty-five days. *Id.* at 65. Plaintiff stopped attending church roughly two and half years ago due to disability. *Id.*

III. <u>Five-factor Sequential Process</u>

The ALJ utilized the five-factor sequential process found in 20 C.F.R. § 404.1520 and concluded that Plaintiff was not disabled according to the Social Security Act's definition. A claimant meets the Act's definition of disability if: (1) the claimant is not

presently engaged in substantial gainful activity; (2) the claimant has a severe, medically determinable, physical or mental impairment or combination of impairments that significantly limit his physical or mental ability to do basic work activities and meet the duration requirement; (3) the claimant's impairment or combination of impairments meets or equals an impairment contained in the listings of impairments of Appendix 1, 20 C.F.R. § Pt. 404, Subpt. P, App. 1; (4) if disability cannot be found based on a listing in Appendix 1, 20 C.F.R. § Pt. 404, Subpt. P, App. 1, the impairment prevents the claimant from performing any past relevant work; and (5) the impairment prevents the claimant from doing any other work, considering the claimant's residual functional capacity (RFC), age, education, and past work experience. The claimant has the burden through the first four steps. *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005). Once the claimant shows that she can no longer perform her previous work, the burden shifts to the Commissioner to show that there is other work existing in significant numbers in the national economy that the claimant can perform. *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000). If the Commissioner meets the burden at step five, the claimant must then prove that she is not able to perform other work. *Id.*

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of August 1, 2015. [8] at 25. At step two, the ALJ found that Plaintiff suffered from the following severe impairments: "heart attack, fracture of right ankle with post-traumatic degenerative changes, and seizures (20 CFR 404.1520(c))." *Id.* at 26. The ALJ determined that Plaintiff's

"medically determinable mental impairments of bipolar disorder, depression, and anxiety do not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and [are] therefore nonsevere." *Id.* at 27. The ALJ found "the claimant's chronic kidney disease, asthma, COPD, bipolar disorder, anxiety, and depression cause only slight abnormalities having such minimal effect that they would not be expected to interfere with [Plaintiff's] ability to work, irrespective of age, education, and work experience and thus, do not constitute 'severe' impairments[.]" *Id.* at 28. The ALJ concluded "the claimant's ruptured spleen, umbilical hernia, and contusions are not severe impairments because the objective medical evidence did not establish that the injuries lasted or were expected to last more than 12 months." *Id.* at 29.

At step three, the ALJ found that Plaintiff did not meet the standard of a listed impairment. *Id.* at 29. Specifically, the ALJ considered whether Plaintiff's impairments satisfied Listing 4.04 (Ischemic Heart Disease), 1.02 (Major Dysfunction of a Joint), and 11.02 (Epilepsy). *Id.*

Before step four, the ALJ found Plaintiff had the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b) "except the claimant can occasionally climb ramps or stairs, but never climb ladders, ropes, or scaffolds. The claimant can also frequently balance, stoop, kneel, crouch, and crawl, but she should avoid exposure to extreme cold or dampness as well as workplace hazards." *Id.* at 30.

At step four, with the use of vocational expert testimony, the ALJ found Plaintiff could perform her

past relevant work as a child welfare case worker (DOT #195.107-014) which is skilled work with an SVP of 7, and was performed at a light exertional level; probation and parole officer (DOT # 195.107-046) which is skilled work with an SVP of 7, and was performed at a light exertional level; and system analyst (DOT #161.167-010) which is skilled work with an SVP of 7 and is generally performed at a sedentary exertional level. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

*Id.* at 33-34.

At step five, the ALJ concluded Plaintiff was not disabled as defined by the Social Security Act from the alleged onset date of August 1, 2015, through February 6, 2019, the date of the ALJ's decision. *Id.* at 34.

ANALYSIS

I.    <u>Standard of Review</u>

This Court will only review the Commissioner's denial of benefits to determine if "(1) the final decision is supported by substantial evidence and (2) whether the Commissioner used the proper legal standards to evaluate the evidence." *Newton,* 209 F.3d at 452. "Substantial evidence is such relevant evidence as a reasonable mind might accept to support a conclusion. It is more than a mere scintilla and less than a preponderance." *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995) (internal quotations omitted). Conflicts in evidence are the purview of the Commissioner and are not for the Court to resolve or review de novo. *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). Moreover, "'[p]rocedural perfection in administrative proceedings is not required' as long as 'the substantial rights of a party have not been

affected.'" *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007) (quoting *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988)).

II.    Analysis

## A. Substantial evidence supports the ALJ's conclusion regarding Plaintiff's affective disorders

The ALJ found that Plaintiff's "medically determinable impairments of bipolar disorder, depression, and anxiety do not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and [are] therefore nonsevere." [8] at 27. Plaintiff argues that substantial evidence does not support the ALJ's decision that her affective disorders were nonsevere. Plaintiff highlights the evidence in the record supporting her position that her affective disorders are severe and worsening, despite medication. [11] at 6-11. Plaintiff takes issue with the ALJ's statement that Plaintiff worked after being diagnosed with affective disorder because Plaintiff did not raise mental health as a disabling condition until April 1, 2016, eight months after she stopped working. *Id.* at 8-9.

The ALJ performed the psychiatric review technique described in 20 C.F.R. §§ 404.1520a(c)(2). [8] at 27. Part of this process required the Commissioner to assess the "B criteria" to determine the degree of functioning in four broad functional areas: (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself. The ALJ explained that, to satisfy the "B criteria," Plaintiff's mental disorder must result in an extreme limitation of one, or a marked limitation of two, of the four areas of mental

functioning. [8] at 27-28 (citing 20 C.F.R. § 404.1520a(d)(1)). The ALJ concluded that Plaintiff experienced mild limitation in each of the B criteria. *Id.* at 27-28.

The ALJ cited the report of consultative psychological examiner, Jan Boggs, Ph.D.; medical records by Ruth Frederick, M.D., Plaintiff's neurologist; and Plaintiff's conflicting statements about the extent to which medication helped. [8] at 27, 297, 67. The ALJ found that Plaintiff's self-reported complaints to Dr. Frederick "do not appear to limit the claimant's ability to function effectively on a sustained basis." *Id.* at 28, 710-11. He noted that Dr. Frederick and Dr. Boggs observed Plaintiff's "labile demeanor." *Id.* at 28. The ALJ considered Plaintiff's intellect, memory, problem-solving skills, low stress tolerance, mood swings, self-isolation, problems getting along with others to the point of termination of employment, throwing items when angry, punctuality, and demeanor. *Id.* at 27-28.

The ALJ gave significant weight to the opinion of Karen Hullett, M.D., a state agency consultant. *Id.* at 32. On September 9, 2017, Dr. Hulett opined that Plaintiff's "mental impairment is not severe at this time. The records also indicate[ ] no significant changes with the other conditions that would reverse the prior determination." *Id.* at 146. The ALJ credited the opinion of Jesse F. Dees, Ph.D., a state agency consultant, who opined that Plaintiff suffered only mild, nonsevere mental impairments. *Id.* at 33, 146-47.

The ALJ gave little weight to Dr. Boggs's opinion that Plaintiff has bipolar disorder, explaining that Plaintiff's bipolar diagnosis by Dr. Boggs "is the result of a single evaluation in which the claimant was the sole historian." [8] at 33. There was

9

no evidence that Plaintiff needed hospitalization, sought treatment from a mental health specialist, or that her mental health condition significantly worsened around the time she ceased working. *Id.* at 27.

Any error in the sentence of the opinion stating, "the claimant has also worked since her diagnosis," is harmless and does not undermine the ALJ's understanding of Plaintiff's ability to engage in work. This is clear because the ALJ found at step one that Plaintiff did not perform substantial gainful activity from her alleged onset date of August 1, 2015 forward. The ALJ acknowledged at the hearing that Plaintiff's symptoms of depression and anxiety developed in 2016. *Id.* at 58. Furthermore, Plaintiff asserted that affective disorder attributed to her being terminated from her last job, and testified that she was terminated in part because of an altercation with a coworker. *Id.* at 74.

Dr. Hullett's and Dr. Dees' opinions, combined with Plaintiff's own statements, are substantial evidence supporting the ALJ's finding that Plaintiff's affective disorders, for the relevant time, were mild, non-severe, and managed with prescriptions. It is the role of the Commissioner, and not the courts, to resolve conflicts in the evidence. *Brown v. Apfel,* 192 F.3d 492, 496 (5th Cir. 1999).

## B. Substantial evidence supports the ALJ's conclusions regarding Plaintiff's postural and walking limitations

Plaintiff maintains substantial evidence does not support the ALJ's finding that Plaintiff could walk six hours of an eight-hour workday. [11] at 15. Plaintiff maintains substantial evidence does not support the ALJ's finding that Plaintiff can "frequently" balance, stoop, kneel, crouch, and crawl, as opposed to "occasionally," because the

medical opinions upon which the ALJ gave substantial weight found that Plaintiff can only "occasionally" balance, stoop, kneel, crouch, and crawl. *Id.* at 13.

Substantial evidence supports the ALJ's decision regarding postural and walking limitations. The ALJ recognized Plaintiff's history of right ankle pain caused by severe degenerative changes in the tibiotalar joint of Plaintiff's right ankle. *Id.* at 31. The ALJ accommodated for right ankle pain in the RFC by limiting Plaintiff "to light work with only occasional climbing of ramps and stairs" due to "the pain and significant loss of strength caused by the degenerative changes to the claimant's right ankle . . . [and] eliminating exposure to extreme cold temperatures." *Id.* The ALJ concluded that Plaintiff's "right ankle limits her ability to lift and carry objects greater than 20 pounds and to climb ramps and stairs due to increased stress that those activities would place on the ankle." *Id.* at 33.

The ALJ relied on consultative examiner Yangling Guo, M.D.'s report which indicated that while Plaintiff's range of motion in the right ankle was limited, Plaintiff was able to squat and rise, rise from a sitting position without assistance, and get up and down from the exam table without difficulty. *Id.* at 627-28. Dr. Guo noted Plaintiff "was able to walk on heels and toes with ease. Tandem walking was normal and the claimant could stand but not hop on the left foot only." *Id.* at 628. The strength in Plaintiff's right ankle was noted at four out of five. *Id.* at 627. Dr. Guo concluded Plaintiff

> can be expected to sit and stand normally in an 8-hour workday with normal breaks. The claimant has mild limitations with walking due to right ankle stiffness. The claimant does not need an assistive device with regards to short and long distances and uneven terrain. The

> claimant has mild limitations with lifting and carrying weight due to right ankle stiffness. There are limitations on bending, stooping, crouching, squatting, and so on and the claimant will be able to perform these occasionally due to right ankle stiffness.

[8] at 629.

The ALJ emphasized that Dr. Guo recommended conservative treatment of physical therapy for Plaintiff's ankle, and no evidence suggested aggressive treatment of the ankle had been recommended. [8] at 31.

Stage agency consultant Carol Kossman, M.D., opined that Plaintiff "was capable of less than the full range of light work except that she could never climb ladders, ropes, and scaffolds; occasionally climb ramps and stairs; occasionally balance, stoop, kneel, crouch, and crawl. *Id.* at 32. The ALJ found Dr. Kossman's opinion "well supported and mostly consistent with the objective evidence and with the results of the consultative examination performed by Dr. Guo." *Id.* The ALJ noted consultative examiner Karen Hulett, M.D.'s agreement with Dr. Kossman. *Id.* at 32, 149.

The ALJ was not required to adopt the opinion of Dr. Guo, Dr. Kossman, and Dr. Hulett that Plaintiff could "occasionally" balance, stoop, kneel, crouch, and crawl, as opposed to "frequently" balance, stoop, kneel, crouch, and crawl. The ALJ, as the factfinder, weighed the opinions of these medical experts against Plaintiff's own reports and was free to discount the medical opinions where they did not fully align with Plaintiff's alleged loss of function. The ALJ found Plaintiff's statements about the intensity, persistence, and limiting effects of her symptoms not entirely consistent with other evidence. *Id.* at 30.

While Plaintiff testified that she could not lift a carton of milk, no records showed Plaintiff complained to any treating physicians or sought treatment for such a condition. *Id.* at 28. While Plaintiff testified that she could not stand for more than one hour per day and must stop twice when walking from a parking garage because of pain in her ankle, the ALJ emphasized that Plaintiff told a doctor in January 2017 (a year and a half after the alleged onset date) that she was active and could walk greater than one mile without difficulty. *Id.* at 26-27, 425. The ALJ also considered Plaintiff's subsequent statement to a doctor that Plaintiff stopped exercising due to stress, not physical disability. *Id.* at 26, 666. *Id.* Substantial evidence supports the ALJ's findings regarding Plaintiff's postural and walking limitations.

### C. Substantial Evidence Supports the ALJ's Conclusion that Plaintiff Was Capable of Performing Past Relevant Work

Plaintiff argues that the ALJ "provide[d] no reasonable explanation for classifying [the one year Plaintiff worked as a system analyst] as past relevant work considering Ms. Wilson did not perform [the job] long enough to learn the job pursuant to the DOT." [11] at 18. This argument is unavailing because the ALJ found Plaintiff capable of performing two other jobs – that of a child welfare case worker, and probation and parole officer. Even assuming the ALJ was incorrect to conclude that system analyst was past relevant work, the ALJ's step four determination that Plaintiff could perform past relevant work remains supported by substantial evidence.

13

RECOMMENDATION

It is recommended that the Commissioner's decision be affirmed and Plaintiff's

appeal dismissed with prejudice.

NOTICE OF RIGHT TO APPEAL/OBJECT

Pursuant to Local Uniform Civil Rule 72(a)(3),

> After service of a copy of the magistrate judge's report and
> recommendations, each party has fourteen days to serve
> and file written objections to the report and
> recommendations. A party must file objections with the
> clerk of court and serve them upon the other parties and
> submit them to the assigned district judge. Within seven
> days of service of the objection, the opposing party or
> parties must either serve and file a response or notify the
> district judge that they do not intend to respond to the
> objection.

L.U.Civ.R. 72(a)(3); *see* 28 U.S.C. § 636(b)(1).

An objecting party must specifically identify the findings, conclusions, and

recommendations to which he objects. The District Judge need not consider frivolous,

conclusive, or general objections. A party who fails to file written objections to the

proposed findings, conclusions, and recommendations within fourteen (14) days of

being served a copy shall be barred, except upon grounds of plain error, from

attacking on appeal any proposed factual finding or legal conclusion adopted by the

Court to which he did not object. *Douglass v. United Servs. Auto. Assoc.,* 79 F.3d 1415,

1428-29 (5th Cir. 1996).

**SIGNED,** this the 15th day of June, 2021.

s/. *John C. Gargiulo*
JOHN C. GARGIULO
UNITED STATES MAGISTRATE JUDGE